**In re ZENOX, INC., Greater New England, Inc., Freeport Development, Inc., Debtors.**

**David J. FERRARI, as Chapter 11 Trustee of the Estates of Zenox, Inc., Greater New England, Inc., Freeport Development, Inc., Plaintiffs,**

v.

**BAR–LAND CORP., and Oneida Development Corporation, Defendants.**

**Bankruptcy No. 92–13597–JEY. Adv. No. 93–1040.**

United States Bankruptcy Court, D. New Hampshire.

Aug. 19, 1994.

Nunc Pro Tunc June 24, 1994.

James E. McGuire, Brown, Rudnick, Freed & Gesmer, Boston, MA, for David Ferrari, plaintiff.

Barbara Stalzer, Atlanta, GA, Trustee for Estate of Richard English.

U.S. Trustee Geraldine Karonis, Manchester, NH.

Jean Claude Sakellarios, Manchester, NH, for debtors Zenox, Inc., Greater New England, Inc. and Freeport Development, Inc.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

In the prior hearing the trustee was granted judgment by default with regard to the

defendant Oneida Development Corporation. In the present hearing conducted on June 17, 1994 the Court heard extensive oral argument with regard to the plaintiff's motion for entry of summary judgment against the defendant Bar–Land Corporation. The defendant has opposed that grant of summary judgment and has in fact filed a cross-motion for summary judgment on its own behalf. Both parties have supplemented their pleadings with extensive documents and affidavits and references to the pleadings in this case.

The trustee's cause of action against Bar–Land is two pronged. The Trustee asserts first that the transfers of the properties in question to Bar–Land are avoidable as fraudulent transfers under § 548(a)(1) involving a transfer with the actual intent to hinder, delay or defraud creditors. The trustee further argues that the transfers in question are avoidable under § 548(a)(2)(B)(iii), which involves a transfer for less than reasonably equivalent value and made at a time when the debtor intended to incur or believed that the debtor would incur debts that would be beyond the debtor's ability to pay as they matured.

### General Background

The transfers in question were made by certain subsidiaries of the debtor, Zenox, Inc., some four months before the bankruptcy filing in this case and were to a Mr. Richard English who was at the time the chief executive officer of Zenox, Inc. The transfers were of real properties held not by Zenox, Inc. but by certain subsidiaries of Zenox, Inc. They were authorized by a board of directors resolution of Zenox at a special meeting on August 11, 1992, at which time the board authorized compensation of Mr. English for back pay due and owing of some $704,000 according to the minutes to be paid by transfer. The minutes of that special meeting of the board of directors end with paragraph 7 which provides as follows:

7. The last item on the agenda was Mr. English's offer to the Company to accept real estate properties in exchange for all, or a portion, of the accrued monies owed to him. Mr. English stated that as per the last 10K filing (6/30/91), the Company owed Mr. English $392,500 in accrued bonuses and $88,972 in accrued salaries. In addition, for the period 6/30/91 to 8/11/92 the Company further owed Mr. English $223,000 in additional accrued salaries, for a total due of $704,472. Dr. Smith then made a motion, seconded by Mr. Norman, and it was thereafter unanimously,

RESOLVED, that to the extent Mr. Richard G. English is willing to do so, the Company is authorized to transfer full title of real estate properties owned by Zenox, Inc., Greater New England, Inc., Freeport Development, Inc., or any other related entity, to Mr. English, or to his designated agent, beneficiary, or assigns, in such appraised aggregate values not to exceed $704,472 as full or partial payment for accrued salaries and bonuses due to him.

The transfers in question were actually executed by a Mr. Nelson, who was the President or other executive officer of the entities that actually held title to the properties—those entities being various subsidiaries of Zenox, Inc. The deeds show no consideration passing, inasmuch as the stamps required by New Hampshire law in amounts to cover different amounts of consideration show the minimum nominal consideration level. There was no attempt to match the values of the properties being transferred to the asserted debt owing to Mr. English by Zenox by any current appraisals.

The deeds transferred title not to Mr. English but to Bar–Land Corporation, the defendant here, which Mr. English organized at that time for the express purpose of receiving title to these properties. The 10K reports filed with the SEC for Zenox, Inc., showed $392,500 in accrued bonuses and $88,972 in accrued salaries as of the last 10K filing on June 30, 1991. The minutes of the board of directors meeting indicated that the company owed Mr. English additional monies coming to a total due of $704,472, although there is no detail in the minutes or in the record on this summary judgment motion as to the specifics of those additional items. There also is no showing of the detail of the amounts owing, as reflected in the 10K report in 1991, so the only thing in this record that shows that anything was owing was the

10K report and the board of directors minutes.

## Section 548(a)(1)

 Under this prong of his attack on these transfers, the trustee relies primarily on the affidavit of Mr. Nelson in which Mr. Nelson recites that these particular transfers were a part of a number of transfers made at that time to get assets away from creditors. It was clear at that time that there were impending attachments by at least one outside creditor, and by a Mr. Davis who was a corporate organizer and was asserting various claims against the companies. The record also reflects that there were numerous transfers at this time of real properties out of the subsidiaries to various corporate insiders in a situation in which I think the record is quite clear that each insider was aware of the unusual transfers, including specifically Mr. English, and all insiders were aware that there might be a collapse of these companies or a forced reorganization of these companies, due to their current situation, and that the insiders simply wanted to get the properties away from the creditors if that should happen.

The defendant argues that at least with regard to Mr. English that this was not the case because he had a bona fide wage and compensation debt owing to him and that he was simply trying to effectuate the resolution of the board of directors of Zenox, Inc. that recognized that and directed the subsidiaries to transfer enough real properties to him to cover that debt. The trustee has really not directly challenged the fact that Mr. English was owed some compensation, due to his prior work, and the fact that the company could not pay him. Indeed the trustee relies on the fact that the company had Mr. English's services for years before but was not financially able to pay him and that Mr. English was aware of this financial condition.

Accordingly I believe on this ground the issue comes down to a focusing on the actual intent involved with this transfer and in that regard I believe that the affidavit of Mr. Nelson, corroborated by the badges of fraud that I find surrounding this transaction, is enough to sustain the trustee's cause of action in this regard on a summary judgment basis.

I find no genuine issue of material fact as to the intent surrounding this transfer. That intent was quite clearly to transfer real properties out of the subsidiaries to cover the debt that the parent corporation owed to Mr. English in a way that would preclude creditors in any imminent reorganization or bankruptcy from being in a "position of strength" to respond to and object to a claim for compensation by a corporate insider that was based on a number of years of prior nonpayment.

 In that regard it is my view that it is sufficient to find that the intent involved was to hinder and delay creditors and not necessarily to defraud creditors. Although the statute has the caption of fraudulent transfer it is essentially the statute of Elizabeth I, and has had the same language throughout, and has always used the disjunctive "hinder, delay or defraud." As I ruled in *In re Kinchla*, 153 B.R. 103 at 105 (Bankr.D.N.H. 1993), and particularly at footnote 2, "It has been held that an intent to hinder or delay alone is sufficient to establish the requisite cause of action." That case involved § 727 but the applicable language is identical. See also cases cited therein.

In my judgment, while Mr. English is correct in asserting that he believed he was entitled to compensation, it is not necessarily true that had this issue come up four months later, when the case went into bankruptcy, creditors would have been precluded from barring his compensation or subordinating it due to the respective position of outside creditors as to those of the insiders. While insiders can have claims against a corporate entity, which will be honored in bankruptcy, such claims normally are given greater scrutiny and in appropriate cases may be subordinated if they amount in economic reality to capital contribution, by deferring compensation on a risk basis, rather than a simple and true loan transaction.

More importantly, the very fact of transfer of the real properties to a corporate insider for deferred past-due compensation shortly before the bankruptcy has the effect of hin-

dering and delaying creditors, since in order to test the bona fides of that compensation, and whether it would be treated as a "debt" *pari passu* with outside creditors in bankruptcy, the creditors have had to deal with first trying to get the properties transferred back into the estate. In other words, Mr. English was putting *himself* in a position to deal from strength, vis a vis the creditors, if the company collapsed or went into bankruptcy, and I believe that is sufficient actual intent under § 548(a)(1) to establish the cause of action, even though arguably he did not have the intent to defraud creditors in the sense that he had a claim for monies he believed was owing to him from Zenox, Inc.

■ There has been some dispute as to whether Mr. Nelson's affidavit can be taken at face value. As I noted during the hearing, this is one of the few cases I've seen, either in my own experience, or in the reported cases, in which the record has produced a "smoking gun" in testimony or in an affidavit as to the intent of the transferor, in which the transferor admits that the transfers were made with an actual intent to hinder, delay or defraud. As I say, it is sufficient to read the requirement to indicate that an intent to at least hinder or delay is sufficient, and I think that's what Mr. Nelson meant when he said get these properties away from the creditors.

Moreover, the dispute about intent relies on Mr. English's counter-affidavit and I simply find that the Nelson affidavit is strong enough to withstand any weakening by the English affidavit, for the reasons that I've indicated above. That also follows from the surrounding context which in effect has badges of "fraud" sufficient to sustain an "intent to hinder or delay" cause of action at least. The transfer was made some four months before the actual bankruptcy; it was made to a corporate insider; it was made to a party who had realized that the company had not been financially able to pay him for years prior to the transfers; it was made not to the corporate insider but to a corporation formed for the purpose of receiving the transfers; the deeds under New Hampshire law should have shown sufficient stamps to cover $704,000 of consideration which was

not done; and there is no indication that there was any attempt to actually match current appraised values of the real properties in question to the claimed debt being satisfied. These surrounding circumstances indicate to me that what was done was a hasty transfer of properties away from the subsidiaries to get those properties away from creditors. Thus, even without Mr. Nelson's "actual intent" affidavit, I think the surrounding circumstances have sufficient badges of fraud to sustain the cause of action under § 548(a)(1).

## § 548(a)(2)(B)(iii)

With regard to this cause of action the trustee must show that reasonably equivalent value was not obtained for the transfers in question, and that they were made at a time when the transferor "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

■ With regard to the first element I think it is clear that the trustee has established that fact. The claimed debt owing that was satisfied, if it was owing as a debt by anyone, was owed not by the owner of these properties, but by Zenox, Inc., the parent corporation. While there may be some factual disputes as to whether the transfers were reasonably equivalent in value to the debt of Zenox, Inc., that factual dispute is not relevant here since the values obtained by the transferor for these properties was exactly zero. The only way that the defendant can avoid this conclusion is to argue the "de facto consolidation or merger" doctrine which is reflected in 19 *C.J.S.*, § 805, Corporations, and has also has been considered by a district judge in this district in *Kleen Laundry and Dry Cleaning Services, Inc. v. Total Waste Management Corp.*, 817 F.Supp. 225 (D.N.H.1993). However, it seems clear that this concept is an equitable doctrine that is used according to the equities of the case and primarily where you're dealing with a series of successor corporations. The *Kleen* decision itself involves a question of CERCLA liability asserted against a successor corporation where the

prior corporation has been dissolved or resolved into the successor corporations.

I do not think that the de facto merger doctrine has any applicability to the present situation. The defendant's contention at bottom is really a substantive consolidation argument to the effect that both the parent and subsidiaries were essentially "one ball of wax" in which all assets and all liabilities should be considered as joint and consolidated. There is no showing here that these entities were not operated separately from an accounting standpoint. There is no showing that the parent corporation or its insiders would prevail against creditors of the subsidiary that actually transferred the properties, in any way that would justify something akin to a substantive consolidation to avoid the reasonably equivalent value problem here for the defendant.

■ However, the trustee has failed to establish the second element for the § 548(a)(2)(B)(iii) prong of his attack, in that there is no showing here that the subsection (iii) element requiring inability to pay has been established. I think the defendant is correct that the trustee cannot have it both ways. He cannot use separate entity analysis on the first element, to disprove reasonably equivalent value, but then turn around and use essentially substantive consolidation analysis to bring Mr. Davis' big claim against Zenox, Inc. into the picture, to indicate the subsidiary would incur debts it couldn't pay. Accordingly, the motion for summary judgment by the defendant as to the § 548(a)(2)(B)(iii) ground must be granted.

### CONCLUSION

The trustee shall submit within ten days a dispositive order in accordance with this Opinion granting his summary judgment motion under the § 548(a)(1) ground and specifying the actual properties involved by appropriate descriptions. The order will also recite that summary judgment in favor of the defendant is granted as to the § 548(a)(2)(B)(iii) ground.